DEFENDANT'S EXHIBIT
Supplement #1

| | |
|---|---|
| STATE OF MAINE<br>YORK, ss. | SUPERIOR COURT<br>CIVIL ACTION<br>DOCKET NO. ALFSC-CV-22-45 |
| SARAH CHAGNON, of Stratham, NH, )<br>)<br>Plaintiff )<br>v. )<br>)<br>TEGAN TESKE, of San Diego, CA )<br>and of Eliot, ME, )<br>)<br>and )<br>)<br>AMANDA GUNTER, of Cape Neddick, )<br>Neddick, Maine, )<br>)<br>Defendants ) | ACTION FOR<br>CIVIL PERJURY<br>AND<br>CONSPIRACY<br>TO<br>DEFRAUD |

NOW COMES, the Plaintiff, Sarah Chagnon Teske, also known as Sarah Chagnon, by and through her attorney, Paul S. Bulger who complains of the Defendants as follows:

## INTRODUCTION

1. Plaintiff, Sarah Chagnon formerly of the Town of Eliot, York County, Maine is a resident of Stratham, New Hampshire (hereinafter "Ms. Chagnon").

2. Defendant, Tegan Teske, is a resident of Eliot, Maine, with an address of 94 Beech Ridge Road, Eliot, County of York, Maine (hereinafter "Mr. Teske"). Mr. Teske is a member of the Navy and until recently, he was temporarily stationed in San Diego, California. At the time of these events, he resided in Portsmouth, New Hampshire.

3. Amanda Gunter is a resident of Cape Neddick, County of York, Maine. Her current living address is unknown. Her business address is c/o The Good To Grow Childcare Center, 64 Dow Highway, Eliot, Maine. She maintains a mailing address of P.O. Box 279, Cape Neddick, Maine, 1141 US Route One.

4. Mr. Teske and Ms. Chagnon have children, two boys, Rylan Teske (DOB 4/13/12) and Rohen Teske (DOB 5/26/15).

5. Mr. Teske has exclusive custody of the two boys following Ms. Chagnon's violation of the then favorable Parental Rights Order, a violation that was clearly an act of desperation, as partly described herein.

6. As of May 2018, Mr. Teske and Ms. Chagnon were engaged in a contentious divorce. Mr. Teske had been charged with DV/Assault.

7. Mr. Teske had left the marital residence in Eliot and the children were living with Ms. Chagnon in Eliot. Mr. Teske exercised weekend visitation with the children.

8. Mr. Teske was residing in a two-story second floor apartment in Portsmouth above a bar, and he was working as Chief of Operations at the Portsmouth Naval Shipyard.

9. Sarah Chagnon operated a private school and daycare for special needs children in Eliot, Maine, an avocation for which Sarah had a master's degree and specialized training.

10. The marriage was difficult and the relationship explosive. Mr. Teske was emotionally abusive and physically domineering, and Mr. Teske's chronic drinking contributed to an atmosphere of apprehension, anxiety, and fear.

11. Ms. Chagnon was fearful of Mr. Teske and described him as an alcoholic and sociopath, lacking in empathy. He also suffered from an eating disorder and depression, conditions for which he refused regular therapy.

## THE EVENTS OF MAY 13, 2018

12. On May 12, 2018, Mr. Teske brought gifts, a card, and flowers to the martial homestead in Eliot, Maine.

13. Teske was courting reconciliation with Sarah as he had done on many prior occasions.

14. Teske stayed the night in Sarah Chagnon's bed, and the couple had sex.

15. The following day, Mother's Day, May 13, 2018, the family had brunch together.

16. Tegan Teske began drinking and continued to drink excessively through the morning and into the afternoon.

17. Teske became disagreeable and a fight ensued between the couple over Mr. Teske's girlfriends and his desire to reconcile. Teske's overtures were rejected.

18. Ms. Chagnon left the brunch event with the children, indicating that she would go back to Tegan's apartment to collect the boys' backpacks. Ms. Teske had her own set of keys to the apartment as a convenience to the couple as part of co-parenting.

19. Teske remained behind at Book 'N Bar, a local watering hole, drinking on the patio.

20. Upon entering the apartment, about 3:00 p.m., Sarah Chagnon found a love letter from a girlfriend and condoms next to bottles of liquor.

21. Chagnon knew she had been setup and she tore up the letter and ripped open condoms and spread them about the room in anger.

22. Ms. Chagnon repeatedly called Teske. She was unable to find the boys' backpacks.

23. Teske was intoxicated, belligerent and unhelpful.

24. As set forth in the Affidavit of Sarah (Teske) Chagnon submitted herewith, Tegan Teske arrived May 13, 2018, at his Portsmouth apartment about 3:30 p.m.

25. He proceeded to call Amanda Gunter, his half-sister, a woman known to him to be spiteful, jealous, and angry in her conduct relative to Sarah Teske to "help him clean up" his apartment as Teske has stated to police.

26. Amanda Gunter arrived with her two small children including her ten month old, Pippa, and proceeded to stalk Sarah Teske about the apartment before attacking Ms. Teske pulling her to the floor from behind by the hair climbing astride her and choking her to near asphyxiation.

27. Mr. Teske followed the women upstairs after hearing Chagnon cry out and recorded the aftermath of the altercation on his cell phone with Ms. Chagnon choking and screaming.

28. The Portsmouth Police Officers, Sarah Wilkinson and Max Webber were called to the scene and recorded their findings. (See the attached Affidavit of Sarah Chagnon, Exhibit A).

29. The Emergency/medical technicians from the Portsmouth Fire Department also conducted an evaluation of the victims and recorded their observations. (See the attached Affidavit of Sarah Chagnon, Exhibit B).

30. The Emergency Medical Technician recorded her findings following an evaluation of the infant. According to the report, The child, Pippa, did not have injuries and "did not appear to be in any distress". (See the attached Chagnon Affidavit Exhibit B, lines 5, 6, and 7 of narrative).

## COUNT I
## Perjury

31. Perjury is the offense of willfully telling an untruth in court after having taken an oath or affirmation.

32. Maine Law also provides a 3 year statute of limitations relative to a claim of perjury, See, 14 MRSA section 870.

33. In addition to pleadings under oath, Amanda Gunter and Tegan Teske each gave testimony under oath in the matter of the consolidated actions for Protection From Abuse referenced herein.

3

34. The attached Complaint for Protection from Abuse (See the attached Affidavit of Sarah Chagnon, Exhibit C attached) filed by Amanda Gunter on the 22nd day of May, 2018 is sworn out under oath and is replete with multiple lies, and misrepresentations inconsistent with the public reporting of the incident of Mother's Day, May 13, 2018, including as follows:

    a. Screamed at me while lunging at me knocking me on my back;
    b. Ripping chunks of hair out;
    c. Clawing at my face and eyes;
    d. Pippa screamed out in pain;
    e. "I saw Sarah's body on top of my baby. My son yelling "you are hurting Pippa";
    f. "I had to punch her" (Sarah); and
    g. "I restrained her with my right hand while reaching for my baby with my left hand."

35. She further states: "I got Sarah off of my baby and she began clawing and ripping my hair out. I had to punch her in order to check on the severity of her (Pippa) injuries." (See Chagnon Affidavit, Exhibit D, the Gunter Complaint, p. 4, last paragraph 5 lines from bottom).

36. These statements describe events that did not happen and could not have happened given the totality of the evidence found at the scene, the conclusions of the investigations, the injuries sustained by Sarah Chagnon, and lack of injuries to Gunter.

37. Furthermore, Gunter's entire Complaint for Protection is a false narrative, a fabrication, attributing statements to Sarah Chagnon that were not made by Ms. Chagnon, and describing events that did not happen, in particular, the statements about Chagnon's physical contact with he baby Pippa and with Ms. Gunter. (See paragraph 34 above (d) through (g).

38. The police and hospital reports include numerous photographs showing deep discoloration and swelling of Ms. Teske's right eye; deep bruising on both sides of the neck and the thigh, all illustrative of a violent attack by Gunter, conditions which cannot be controverted.

39. Ms. Gunter was arrested and charged with assault and of asphyxiation. (See Affidavit). Ms. Chagnon was not charged. (See Affidavit, Exhibit A, Arrest Report).

40. The Portsmouth Police found no offensive injuries on the body of Amanda Gunter and no injuries on baby Pippa. (See Affidavit, Exhibit B).

41. Sarah Teske was transported to the hospital following the attack. The Gunter family members did not require examination at the hospital.

4

42. Immediately following the Mother's Day events of May 13, 2018, the Plaintiff filed a petition for Protection From Abuse, May 14, 2018.

43. After consulting with Attorney Howell (attorney for Mr. Teske in the divorce proceedings in *Teske v. Teske*) Amanda Gunter concocted the facts contained in her sworn statement and filed a counter Complaint for Protection from Abuse on May 22, 2022, nine days following the incident. (See the attached Affidavit of Sarah Chagnon, Exhibit D). Gunter suffered no injuries and could clearly not meet the statutory definition of abuse or threats of abuse necessary for a Protective Order.

44. Each of said statements made under oath by Amanda Gunter are false, and Gunter knew them to be false.

45. Attorney Howell represented Tegan Teske and Amanda Gunter, Each of said statements made under oath were false and attorney Howell knew then to be false or should have known them to be false. Howell certainly knew that Gunter had not been threatened as defined by law.

46. Each of said statements are inconsistent with the police and fire department reports and with the facts found by the investigating EMT and police officers at the scene.

47. Each of the statements made under oath by Gunter are inconsistent with the physical evidence: photographs of Sarah's physical condition including bruising on Sarah's neck and head and the investigator's conclusions of no harm to baby "Pippa".

48. On information and belief, Attorney Howell suborned the perjury of Amanda Gunter and leaked a false narrative to the local press as part of a scheme to damage the reputation of Sarah Teske and favorably alter the parental rights of Tegan Teske.

49. Mr. Teske admitted to Sarah Teske that Mr. Howell instructed Amanda Gunter to file her competing Petition for Protection From Abuse, "in order to bolster her defense in the criminal charges" that followed against Ms. Gunter.

50. Judge Moskowitz found that Teske was "vulgar" and he imposed an Order of Protection against both women. Vulgarity is not an element of the PFA standard.

51. Shortly thereafter, Sarah Chagnon's daycare license was revoked after the PFA was reported to the state.

52. Judge Moskowitz did not review the police reports, the EMS report, the photographs or Pippa as part of his evidentiary rulings.

53. The appearance of Gunter in the apartment, the entrapment of Sarah Chagnon, and the assault were part of a pattern of abuse by Teske.

WHEREFORE, Sarah Chagnon lost her license and ability to make a living, she lost her ability to defend herself, she lost her home, she lost her business and she lost custody of her children, all of which are part of the damages resulting from the Mother's Day 2018 assault.

## COUNT II
### Conspiracy to Defraud

54. The Plaintiff repeats and realleges and incorporates by reference the allegations of paragraphs 1 through 53 herein.

55. On information and belief, Tegan Teske conspired with Amanda Gunter and Attorney Howell to concoct a story as part of a scheme to show Sarah Chagnon to be unfit and dangerous.

56. As a consequence of said scheme, Tegan Teske brought an action to revise custody and deny visitation to the Plaintiff.

57. At the September 2019 hearing, the trial court refused to allow the EMT and the police to testify concerning these matters and refused the admission of the reports referenced herein ostensibly on the basis of HIPAA concerns raised by the City of Portsmouth (Attorney Robert Sullivan).

58. Ms. Teske was unrepresented at the hearing and the Court did not raise or address the issue of waiver of HIPAA in light of the respondents' introduction of statements relating to the reporting of her physical condition and the physical harm to Pippa her infant.

59. The Court refused an *in camera* review of documents and could not, therefore, fairly evaluate the application of HIPAA relative to the pleadings.

60. The Plaintiff concluded that the Courts did not take her claims of abuse seriously, and she reasonably concluded that she and her boys might suffer further abuse.

61. The Court finding of "abuse" against her triggered a cascade of events that could have been predicted and was therefore clearly foreseeable.

62. Ms. Chagnon lost her license for her childcare center for which she was highly credentialed.

63. Tegan Teske brought an emergency motion to take custody of the children, Rylan and Rohan on or about the 18th day of November 2019.

64. Mr. Teske was granted custody and left the State with his boys for an assignment in San Diego.

6

65. Ms. Chagnon lost all of her property in the divorce: the house in Eliot, the business; and her savings.

66. Mr. Teske's plan was built upon a foundation of lies and deceit and carried out against the Plaintiff in consultation with Gunter.

67. The Co-Defendant, Amanda Gunter, was put into place as the owner and director of the childcare center, a position for which she had no prior training or qualifications.

68. The Plaintiff, Sarah Chagnon, has been denied visitation and contact with her children.

69. Ms. Chagnon lost her license to operate her childcare facility and school on the 19th day of July 2019 and has not had gainful employment since.

70. She has lost her home and the ownership of the daycare property care property at 64 Dow Highway, Eliot, in the divorce proceedings, and the accrued earnings from the business, goodwill and fit up costs in the childcare center, approximately $500,000.

71. Chagnon lost her license to run her daycare, a thriving business.

72. As a result of the loss of her business, Chagnon lost the wherewithal to defend herself in Court.

73. As a consequence of a near death experience, Sarah Chagnon suffers from Post-Traumatic Stress Disorder.

74. As a consequence of economic loss, Sarah Chagnon lost the ability to fight for her children.

75. In the divorce that followed, Sarah Chagnon lost her home, her business, including the real estate, and her right to exercise parental rights and responsibilities, child support and marital support.

WHEREFORE, the Plaintiff prays for a finding of conspiracy to defraud against the Co-Defendants and for money damages and declaratory relief to have her parental rights restored, to have her property rights restored and for reconsideration of parental rights and attorney's fees and for such other relief as the Court may award directly related to the perjury and conspiracy of the Defendants.

Dated at Portland, Maine this 15th day of April 2022.

                                              Paul S. Bulger, Esq.
                                              Maine Bar No. 3209

Jewell & Bulger, P.A.
511 Congress Street
Suite 502
Portland, ME 04101
(207) 774-6665