STATE OF MAINE

DISTRICT COURT
Location: YORK DISTRICT COURT
Docket No: YORDC-PA-2019-00105

**DEFENDANT'S EXHIBIT** Supplement #3

SARAH TESKE
individually and on behalf of:
RYLAN TESKE
ROHEN TESKE

☐ DISMISSAL/TERMINATION
☑ JUDGMENT FOR DEFENDANT/TERMINATION

V.

TEGAN TESKE

☐ The plaintiff has moved to dismiss the protection complaint. Motion Granted. The Order for Protection (and any accompanying Firearms Order) issued by this Court on _____ is terminated and of no further force or effect and the Complaint for Protection is hereby dismissed.

☐ The plaintiff having failed to appear for the hearing on the complaint, the Complaint for Protection is dismissed. The Temporary Order for Protection (and any accompanying Firearms Order) issued by this Court on _____ is terminated and of no further force or effect.

☑ After hearing on __10/17/19__, at which the plaintiff (was)(not) present and the defendant (was)(not) present, the court denies the plaintiff an Order for Protection for the following reason(s): The court finds that the plaintiff is not entitled to the requested relief because the plaintiff has failed to prove that the defendant abused/harassed the plaintiff as the term "abuse"/"harassment" is defined in 19-A M.R.S.A. Section 4006 or 5 M.R.S.A. Section 4651(2). The Temporary Order for Protection (and any accompanying Firearms Order) issued by this Court on __8/9/19__ is terminated and of no further force or effect and judgment is entered for the defendant.

☐ Any child support order(s) issued in connection with this PA action are also terminated.

Date: __10/18/19__                        _LeaAnne Sutton_
                                          Judge, District Court

A true copy, Attest. _____
                    (Deputy) Clerk

ENTERED ON THE DOCKET __10/18/19__
Copies provided to the parties ___ in hand ☑ mailed
Clerk's initials __TLM__

PA-014, Rev. 08/09                Page 1 of 1

STATE OF MAINE

YORK, SS.

DISTRICT COURT
Location: York
Docket No. PA-19-105

Sarah Teske, individually and o/b/o
Rohen and Rylan Teske

       Plaintiff

v.

Tegan Teske

       Defendant

**ORDER**

    This matter came before the court for a final hearing on Plaintiff's Complaint for Protection from Abuse, filed on August 9, 2019. Plaintiff was granted a Temporary Order for Protection from Abuse on that date. Thereafter, Defendant was properly served and the matter was scheduled for hearing on August 21, 2019. Plaintiff moved to continue the matter from that date until September 4, 2019, and that motion was granted. On September 4, 2019, the parties agreed that the hearing would be longer than the Court could accommodate on that date, and the matter was continued to October 4, 2019. Prior to that date, Plaintiff filed a motion to continue, which was granted over Defendant's objection. The matter was then set for final hearing on October 17, 2019. On that date, Defendant made an oral motion to continue the matter, Plaintiff objected, and the Court denied the motion and the hearing began. Prior to hearing, the Court ruled on Defendant's motion in limine.

    At hearing, Plaintiff and Defendant were each represented by counsel.[1] Both parties called witnesses, and both Plaintiff and Defendant testified. The Court admitted some exhibits offered by each party and excluded others offered by each party. The hearing concluded after 5 p.m. on October 17, 2019. Given the time of day, the Court did

---

[1] Defendant's attorney, Matthew Howell, Esq., was not present for hearing, nor did he move to continue the matter. Attorney Craig Rancourt, Esq., entered his appearance and represented Defendant at hearing on October 17, 2019.

not render its findings at the close of the hearing; the Court informed the parties that it would render its findings in writing as soon as possible and would not call the parties back to court to make these findings orally.

After considering all of the testimony and exhibits presented at hearing, and after taking judicial notice of prior court orders involving Plaintiff and Defendant, the Court finds as follows:

1. Plaintiff and Defendant are married, and are the biological parents or Rylen Teske (█████) and Rohen Teske █████ Defendant filed for divorce from Plaintiff on September 6, 2017. This divorce case is pending before a family law magistrate and has not been set for trial before a judge. The most recent order in the divorce matter is dated July 1, 2019. Defendant was granted certain contact rights with the minor children pursuant to this Order. This Order was entered by agreement, and both parties were represented by counsel when the order was agreed upon. By agreement of the parties, Defendant was to have the children starting Fridays at 4 p.m. until Mondays at 8 a.m. This interim order also Orders that the parties shall not have any physical or verbal contact during exchanges of the children.

2. Plaintiff filed a Complaint for Protection from Abuse on April 28, 2017, and a Temporary Order was granted. Plaintiff moved to dismiss the Complaint in writing on May 1, 2017. On May 10, 2017, Plaintiff signed an Affidavit drafted by her own attorney asking again to have the Temporary Order dismissed and stating her reasons why she was making the request. Her reasons, stated under oath, for asking the Court to dismiss the Temporary Order included that neither she nor her children feared Defendant and further that she had no concerns about Defendant harming her or the children. On May 17, 2017, at Plaintiff's request the Court dismissed PA-17-00047. The Court is unpersuaded by Plaintiff's testimony or by Plaintiff's Exhibit 14 that Plaintiff moved to dismiss PA-17-00047 because Defendant placed her under duress to do so. Plaintiff either lied under oath when she signed the affidavit on May 10, 2017, or she is testifying

falsely today. Under either circumstance, Plaintiff's behavior casts doubt on her credibility with the Court.

3. Plaintiff filed a second Complaint for Protection from Abuse on August 31, 2018, and a Temporary Order was granted. This case, PA-18-131 was dismissed with prejudice, by agreement of the parties, on October 3, 2018. Both parties were represented by counsel at the time. Additionally, on October 3, 2018, by agreement of the parties, an interim order was entered in the divorce matter pertaining to Defendant's contact with the minor children. The interim order in the divorce case specifically states that the PA is dismissed with prejudice. Both the interim order and the form dismissal of the PA are signed by the same judge.

4. On July 19, 2019, Defendant was attempting to pick up the minor children from Plaintiff at a daycare, as contemplated by the agreed-upon order from July 1, 2019 in the divorce case. On that date, Nicole Clark, as caseworker with DHHS tasked with investigating a case against Defendant, had arranged with Defendant to meet with him and the minor children so that she could observe the minor children in Defendant's home. When Defendant didn't arrive, she called him, and learned that Defendant was late because although Rohen got into Defendant's vehicle, Rylen refused to do so. When Ms. Clark hung up with Defendant, she called a supervisor and then went to the day care. When she arrived, she was witness to a chaotic scene: Rylan was running around and upset and would not go with Defendant. Plaintiff opened a gate that allowed Rylan back into the school. When Plaintiff and Rylan came out again, they ran together toward Plaintiff's vehicle. A co-worker or friend of Plaintiff's put Rylan into the friend's vehicle, causing Defendant to stand in front of that car so that the friend could not leave with Rylan. Defendant remained calm for the situation; Plaintiff, angry and upset, yelled at Defendant "get away from my child". The Court finds that Plaintiff's behavior likely escalated the situation. The fact that Rylen did not want to go with Defendant for a scheduled contact visit is not an indicator that Defendant is or was

abusing the minor child. Although Plaintiff testified that Defendant shoved and body checked her into a vehicle, her testimony is contradicted by Defendant and by Nicole Clark. The Court finds that during this incident when Defendant interacted with Plaintiff near a vehicle, that Defendant held up his hands, palms facing forward, near his shoulders and said to Plaintiff "we can't have contact with each other." Defendant's reference was to the agreed-upon interim order that had been entered into on July 1, 2019. The Court further finds that the police responded to this scene and no charges were filed against Defendant.

5. Defendant had a contact visit pursuant to the July 1, 2019 interim divorce order with Rohen on August 3 and 4, 2019. During this visit, Defendant put Rohen in a time-out for breaking or damaging a toy, using the parameters for time-outs that he had been given by Plaintiff.

6. Rohen sees Joleen Chiraidonna, a psychotherapist in private practice who holds licenses as follows: Masters in Social Work ("MSW") and Licensed Clinical Social Worker ("LCSW"). She has specialized in "family systems work" for the past twenty-five years. She began working with Rohen at the end of May, 2019 after Plaintiff contacted Ms. Chiraidonna to commence counseling. She diagnosed Rohen with trauma and stressor related disorder, a diagnosis that was made prior to her meeting with or speaking with Defendant. Since making her diagnosis, she has met with Defendant once, and with Defendant and Rohen once. She treats Rohen for issues of anxiety around seeing his father, with the treatment goal to decrease Rohen's anxiety and fear. She is aware that Plaintiff had been found to have coached Plaintiff's other son, Rylan, on what to say during a court hearing, and she is not concerned about it. The Court finds that Ms. Chiraidonna is biased in favor of Plaintiff. Ms. Chiraidonna did not make a report to DHHS after seeing Rohen on August 6, 2019.

7. On August 6, 2019, Ms. Chiraidonna had a therapy session with Rohen, Rylan and Plaintiff. The session began individually with Ms. Chiraidonna meeting with Rohen

alone. When they met individually, Rohen gave her no information that anything was wrong. When she asked Rohen about a small cut on his leg, he said he fell down some steps. Rohen said the band aid on his leg came from his father. The Court finds that while in Defendant's care, Rohen cut his leg and needed a band aid, which Defendant did provide for him. Prior to this specific therapy session, Plaintiff had sent a recording by text message to Ms. Chiraidonna that Plaintiff claimed was a recording of something Rohen had said about Defendant. Ms. Chiraidonna received the text, but could not hear the recording. When Plaintiff came into the room, Plaintiff, in front of Rohen, told Ms. Chiraidonna what Rohen had supposedly said on the recording. Ms. Chiraidonna then proceeded to ask Rohen questions about his father. After that, Rohen said that his father had gotten mad at him about wrecking a toy, had chased him around the house and hit him on the leg. Although the Court determined that the child's statement is admissible, the court finds that the child's statement is not credible given that his statement was made after Plaintiff spoke in front of Rohen. When Rohen met individually with the therapist, he made no such disclosure to her.

8. On August 6, 2019, after meeting with Ms. Chiraidonna, Plaintiff took Rohen to the York Hospital Walk-In Center. Once there, he was examined by Heather Layfield, a Physicians' Assistant with 16 years' experience and requisite training for her field of employment. She examined Rohen, and observed that he had a bruise on his left thigh and three small bruises on his left shin. The Court finds Ms. Layfield to be credible. She examined Rohen after having spoken with Rohen and Plaintiff. Plaintiff, in the presence of Rohen, indicated that Defendant had punched Rohen in the lower leg. Rohen repeated to Ms. Layfield that his father had punched him in the lower leg. In her professional opinion, the left shin would be an awkward place for a punch, and in her 16 years as a PA, she has not seen a 4-year-old patient who had been punched in the shin.

9.  The Department of Health and Human services was assigned to investigate two claims made that Defendant was physically abusing the minor children. In August 2019, DHHS caseworker Megan Hurlihey was assigned to investigate the second claim, that Defendant had punched Rohen in the lower leg. Ms. Hurlihey interviewed Rohen and Plaintiff, as Plaintiff had requested that she not be interviewed by Nicole Clark, the DHHS caseworker already assigned to the family. Ms. Hurlihey interviewed Plaintiff and Rohen on August 8, 2019.[2] Ms. Hurlihey met alone with Rohen in his bedroom at Plaintiff's home prior to meeting with Plaintiff. Rohen appeared comfortable and unconcerned. After meeting with Rohen, Ms. Hurlihey formed the opinion that there was reason to doubt that Defendant had hit or punched Rohen. The Court finds Ms. Hurlihey credible. At this home interview on August 8, 2019, Plaintiff told Ms. Hurlihey that she wanted to make sure that Ms. Hurlihey knew that the only thing she (Plaintiff) had told Rohen prior to Ms. Hurlihey coming was that "we don't hit, that's not nice." Each DHHS case was closed with no findings or substantiation of abuse. Through the overall investigation, numerous witnesses were interviewed in order for the Department to reach its conclusion. The Department has no concerns about either minor child while in the care of their father or their mother.[3]

10. The Court had the opportunity to observe both Plaintiff and Defendant as they testified. Plaintiff presented to the Court as emotional, at times angry, and eager to get her points across to the Court. These traits alone do not render Plaintiff a non-credible witness, in the Court's view. However, the Court finds that Plaintiff is not credible in her assertions that she and/or her children have been abused. Plaintiff's most recent complaint for protection from abuse was filed about a month after an agreed-upon interim order was entered in a divorce case that granted contact visits to Defendant that

---

[2] This is one day prior to Plaintiff filing her complaint for Protection from Abuse.
[3] The DHHS case was closed on September 11, 2019, after a temporary order had been entered for Plaintiff, awarding her sole temporary parental rights and responsibilities for the minor children. However, both Department witnesses testified credibly that neither of them had concerns about the children while in the care of their father or their mother.

he had not been having, and was filed the day after Meghan Hurlihey interviewed Rohen and Plaintiff, and formed an opinion that there was reason to doubt the allegation against Defendant. At hearing, Plaintiff testified about a domestic violence incident from 2010, an incident Plaintiff describes as one where Defendant held a paring knife to her wrist, made her cut herself, and encouraged her to kill herself. This allegation had never been raised at any time, and not in any Complaint for Protection from Abuse. The Court finds Plaintiff's testimony about this incident to be not credible. The Court does not believe Plaintiff's testimony that she was not able to disclose this serious allegation until the day of the hearing. The Court understands that, at times, it can be very difficult for a person affected by domestic violence to disclose incidents of abuse. However, including this proceeding, Plaintiff has filed three Complaints for Protection from Abuse against Defendant in which she was able to allege several equally serious incidents of domestic abuse. It strains credulity to suggest that, in this context, Plaintiff was unable to have previously disclosed this allegation from 2010. The Court finds Defendant to be credible. He was forthright and non-confrontational. His testimony about the events of July 19, 2019 is corroborated by an independent witness whose job it was to investigate Defendant. Finally, Plaintiff offered and the Court admitted into evidence phone conversations between Plaintiff and Defendant, Exhibits 40 and 44.[4] The Court finds that these recordings do not call into question Defendant's credibility on certain points of his testimony.

Based on the facts as found by the Court after hearing, the Court denies the Plaintiff a Final Order for Protection from Abuse. The Temporary Order dated August 9, 2019 is terminated.

---

[4] Defendant had knowledge of these recordings, because although Ex. 44 was made in 2017, Plaintiff had recently submitted these recordings to his superiors, and had attempted to present it to his superiors as though it was current information. Defendant is a Lt. Commander with the Naval Reserve and is employed at Portsmouth Naval Shipyard as a chief nuclear test engineer.

The Clerk will incorporate this order by reference on the docket at the direction of the Court pursuant to M.R.Civ.P. 76(a).

Date: 10/18/19

_____
Judge, Maine District Court

ENTERED ON THE DOCKET 10/18/19
Copies provided to the parties ___ In hand ✓ mailed
Clerk's initials TLM