UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| SARAH CHAGNON, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>TEGAN TESKE, AMANDA GUNTER, )<br>and BRENDA DIEDERICH, )<br>)<br>Defendants. ) | No. 2:23-cv-00389-LEW |

## ORDER ON MOTION TO DISMISS

The matter is before the Court on supplemental briefing on Defendants' Motion to Dismiss (ECF No. 16). The supplemental briefing addresses the question whether a prior lawsuit Chagnon filed in Maine Superior Court involving claims for "judgment by perjury" under 14 M.R.S. § 870 has claim preclusive impact on the instant litigation. In a prior Order on Motion to Dismiss (ECF No. 25), I both ordered the supplemental briefing and rejected all of Defendants' other argument for outright dismissal of Chagnon's Complaint based on either claim preclusion or issue preclusion. This Order assumes the reader is familiar with the prior Order.

### BACKGROUND

In this action, Plaintiff Sarah Chagnon sues her former husband, Tegan Teske, Teske's mother, Brenda Diederich, and his sister, Amanda Gunter ("Defendants"). Chagnon alleges that Defendants jointly participated in a longstanding campaign of

physical and emotional abuse during her marriage to Teske and during their separation pending their divorce. Over the years, various proceedings have arisen in the State of Maine District Court, including the divorce proceeding and more than one protection from abuse proceeding.

In 2022, in the wake of Maine District Court custody and protection from abuse ("PFA") proceedings, Chagnon filed a civil proceeding in Maine Superior Court in which she alleged "civil perjury" and "conspiracy to defraud" against Gunter and Teske. Mot. Exs. 1 & 2 (ECF Nos. 16-1, 16-2). The first count, labeled "civil perjury," explicitly relied on 14 M.R.S. § 870 and asserted that Teske and Gunter perjured themselves in Maine District Court during a 2018 hearing to support a bogus petition for protection from abuse that Gunter filed against Chagnon. The second count, labeled "conspiracy to defraud," incorporated the allegations informing the first count and added allegations of similarly fraudulent conduct during a September 2019 hearing brought by Teske in state court to revise Chagnon's custody and visitation rights to the former couple's minor children. Both of these hearings occurred during the pendency of Chagnon and Teske's highly contentious divorce proceedings. Through her new perjury claims in 2022, Chagnon sought from the Maine Superior Court varied relief consisting of a statutory award of money damages, restoration of parental rights, restoration of property rights, and any other relief related to the underlying hearings in which Teske and Gunter allegedly engaged in perjury.[1] Supp. Brief Ex. 1 (ECF No. 26-1).

---

[1] The second count in the Superior Court action also raised a variety of evidentiary concerns that would ordinarily need to be raised in a direct appeal. However, like the first count, the second count seems to

The Maine District Court has jurisdiction over divorce matters and matters "involving minors," including matters pertaining to parental rights. 4 M.R.S. §§ 152(5-A), (11). The Maine Superior Court is a court of general jurisdiction and has jurisdiction over both a claim of "civil perjury," 14 M.R.S. § 870, and the tort claims advanced in the current case, assuming they had been brought in state court. *Zani v. Zani*, 299 A.3d 9, 14 n.6 (Me. 2023); *Wright v. Dep't of Def. & Veterans Servs.*, 623 A.2d 1283, 1285 (Me. 1993); 4 M.R.S. § 105(1).

## DISCUSSION

The Court applies Maine law to determine the preclusive effect of prior judgment rendered by a Maine State court. *Kremer v. Chem. Const. Co.*, 456 U.S. 461, 466 (1982). "[R]es judicata is a general doctrine that 'prevents the relitigation of matters already decided.'" *Pearson v. Wendell*, 125 A.3d 1149, 1157 (Me. 2015) (quoting *Portland Water Dist. v. Town of Standish*, 940 A.2d 1097, 1099 (Me. 2008)). There are two kinds of res judicata: claim preclusion and issue preclusion. *Pearson*, 125 A.3d at 1157. The preclusive impact of a prior judgment is a question of law. *Wells Fargo Bank, Nat'l Ass'n v. Bump*, 244 A.3d 232, 236 (Me. 2021).

In the prior Order on Motion to Dismiss, I ordered supplemental briefing to address the claim preclusive impact of litigation in the Maine Superior Court based on 14 M.R.S.

---

have turned principally on an allegation that Teske and Gunter engaged in "lies and deceit" before the Maine District Court. Sup. Ct. Compl. ¶ 66. Although Chagnon used a different heading for the second count ("Conspiracy to Defraud"), it is not apparent that the second count could have been actionable as anything other than a second claim for relief under 14 M.R.S. § 870, albeit as a claim premised on perjury during the 2019 custody hearing rather than perjury during the 2018 PFA hearing that informs the first count. For this reason, I interpret both counts in the Superior Court complaint as attempts to asserts claims under 14 M.R.S.§ 870.

3

§ 870, Maine's civil perjury statute. A statutory civil perjury claim is a "miscellaneous action" for damages arising by reason of a perjury that produces an unjust judgment:

> When a judgment has been obtained against a party by the perjury of a witness introduced at the trial by the adverse party, the injured party may, within 3 years after that judgment or after final disposition of any motion for relief from the judgment, bring an action against such adverse party, or any perjured witness or confederate in the perjury, to recover the damages sustained by the injured party by reason of such perjury. The judgment in the former action does not bar an action under this section.

14 M.R.S. § 870(1). By dint of this statute, a disappointed litigant with evidence of perjury might obtain not only relief from the underlying judgment, through Maine Rule 60(b), but also a damages remedy.

An action based on 14 M.R.S. § 870 provides an exception to the claim preclusive effect of prior state court judgments, *Kraul v. Me. Bonding & Cas. Co.*, 672 A.2d 1107, 1109 (Me. 1996), and potentially enables dissatisfied litigants to revive factual disputes that would otherwise be considered resolved. Here, the Superior Court action was an outgrowth of prior civil proceedings involving the principal parties (Chagnon, Teske, and Gunter) and was narrower in scope than the current action, in which Chagnon seeks tort recovery based on an alleged history of physical and emotional abuse rather than perjury during specific district court proceedings. Given the targeted nature of a § 870 claim, it is not self-evident that such a claim should have any greater preclusive impact than the preclusive impact otherwise assigned to the underlying judgment challenged in the § 870 claim.

On the other hand, the Maine law of claim preclusion prevents serial litigation involving the same litigants when a final judgment entered in a prior action and "matters

presented for decision" in a new action "were, or might have been litigated in the [prior] action." *Machias Sav. Bank v. Ramsdell*, 689 A.2d 595, 599 (Me. 1997).[2] "To determine whether the matters presented for decision in the instant action were or might have been litigated in the prior action," Maine courts "examine whether the same cause of action was before the court in the prior case." *Finch v. U.S. Bank, N.A.*, 307 A.3d 1049, 1058 n.5 (Me. 2024) (quoting *Wilmington Tr. Co. v. Sullivan-Thorne*, 81 A.3d 371, 375 (Me. 2013)). A cause of action is defined "through a transactional test, which examines the aggregate of connected operative facts that can be handled together conveniently for purposes of trial to determine if they were founded upon the same transaction, arose out of the same nucleus of operative facts, and sought redress for essentially the same basic wrong." *Id*. (quoting *Wilmington Tr. Co.*, 81 A.3d at 375).

Given the narrow scope of an action under 14 M.R.S. § 870, I find that a comparison of the Superior Court litigation and the current litigation does not satisfy the transactional test.[3] The Superior Court litigation harkened back to a custody hearing and a PFA hearing, and Chagnon's allegations of abuse on May 13, 2018, provided the necessary context to those proceedings. The prior litigation represented an effort to collaterally attack otherwise settled dispositions entered by the District Court, which dispositions were themselves

---

[2] The other two requirements for claim preclusion are readily met, though not as to Diederich. The same parties or their privies are involved and a valid final judgment entered in the Superior Court. *See Ramsdell*, 689 A.2d at 599.

[3] As explained in the prior Order on Motion to Dismiss, the divorce judgment and interim rulings involving custody and protection from abuse matters do not have claim preclusive effect on their own. Order at 5–6 (citing *Henriksen v. Cameron*, 622 A.2d 1135, 1141 (Me. 1993); *Richards v. Bruce*, 691 A.2d 1223, 1226 (Me. 1997); *Gurski v. Culpovich*, 540 A.2d 764, 766 (Me. 1988)).

lacking in claim preclusive force beyond the scope of the matters adjudicated. In the current action, by comparison, Chagnon seeks to recover for alleged tortious conduct that transpired during the marital relationship. Her allegations concern conduct before and after the alleged May 13, 2018, assault that resulted in the PFA hearing and custody hearing. The matters presented now extend well beyond the limited scope of a § 870 attempt to undo prior dispositions by the District Court. They depend on events and transactions that would have dramatically expanded the scope of proceedings in Superior Court had they been advanced there. They also concern different alleged wrongs.

Given this divergence, I struggle to see why Chagnon's litigation effort to collaterally attack in Superior Court unfavorable District Court dispositions by means of § 870 should have preclusive effect simply because that effort occurred in Superior Court, a venue in which Chagnon "might" have joined all of her now-pending tort claims. "Claim preclusion is grounded on concerns for judicial economy and efficiency, the stability of final judgments, and fairness to litigants." *20 Thames St. LLC v. Ocean State Job Lot of Me. 2017 LLC*, 252 A.3d 516, 522 (Me. 2021) (quoting *Fed. Nat'l Mort. Ass'n v. Deschaine*, 170 A.3d 230, 237 (Me. 2017). "The doctrine promotes those goals by preventing a party from splintering his or her claim and pursuing it in a piecemeal fashion by asserting in a subsequent lawsuit other grounds of recovery for the same claim that the litigant had a reasonable opportunity to argue in the prior action." *Id.* (quoting *Deschaine*, 170 A.3d at 237).

The interest in judicial economy is not advanced by a ruling that would require a full-blown suit over every alleged tort occurring during a marital relationship whenever a

6

person believes that it might be possible to use § 870 to undo the specific negative ramifications of a prior domestic or family-matters ruling in the District Court. Nor does the declination of claim preclusion in this case undermine the stability of the Superior Court order. The prospect of Chagnon obtaining a recovery for alleged physical and emotional abuse is not incompatible with either the Superior Court judgment on the § 870 perjury matter or the underlying District Court dispositions involving custody and PFA matters. Nor is it fair to preclude tort claims arising out of the wide scope of a marital relationship based on allegations of perjury in the context of discrete District Court hearings in family and PFA matters, even though the allegations of perjury are raised in the Superior Court, a setting in which the tort claims might have been aired. Simply stated, the tort claims are not the "same cause of action" as the perjury claims. *20 Thames Street LLC*, 252 A.3d at 522.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in the prior Order on Motion to Dismiss (ECF No. 25), Defendants' Motion to Dismiss (ECF No. 16) is **DENIED**.

**SO ORDERED.**

Dated this 6th day of August, 2024.

/s/ Lance E. Walker
Chief U.S. District Judge