UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| SARAH M. CHAGNON,<br><br>Plaintiff<br><br>v.<br><br>TEGAN TESKE and AMANDA GUNTER,<br><br>Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 2:23-cv-00389-LEW |

# **ORDER**

After two days of trial, I discharged the jury in this civil action after the parties' attorneys reported a settlement. The Plaintiff, Sarah M. Chagnon, now contends that her attorney did not have authority or else coerced her into giving authority to settle. The matter is before the Court on a set of post-trial motions presented by Plaintiff. *See* Pl. Mot. for Extension of Time to Secure New Counsel and Mot. to Disregard Coerced Settlement (ECF No. 148), Pl. Second Mot. for Extension of Time to Secure New Counsel, for Relief from Coerced J., for New Trial, for Atty. Fees (ECF No. 151), Pl. Am. Second Req. to Extend Time to Secure New Counsel, for New Trial and for Atty. Fees (ECF No. 153). For reasons that follow, Plaintiff's Motions are reserved pending further briefing, as outlined in the conclusion of this Order.

## BACKGROUND

This case went to jury trial on August 18 and 19, 2026. At the end of the second day of trial, counsel for both parties informed the Court that the parties agreed to settle the

case. In the run up to this announcement, the Plaintiff's presentation of her case had been interrupted by a certain controversy involving a witness. Specifically, at the end of the first day of trial, while the attorneys were returning to their tables from a sidebar conference, the witness spontaneously volunteered testimony without a question being asked. After speaking with his clients and support staff, the Defendant's attorney requested another side bar at which he indicated that the Plaintiff was observed coaching the witness during the prior sidebar conference.[1] See Aug. 18, 2026, Trial Tr. (hereafter "Day 1 Tr.") at 153. In the courtroom, the Plaintiff's table sits immediately in front of the jury box and the witness stand is immediately in front of the Plaintiff's table. The allegation was problematic not simply because of the concern over coaching, but because of the concern that the jury may have observed it.

Given the time of day, the unavailability of certain of the Plaintiff's anticipated witnesses, and the Defendants' unreadiness to begin their own case, I sent the jury home and advised the attorneys, in the presence of the parties, to be prepared to discuss, the next morning, what to do about "the one outstanding issue that came up before we concluded trial today." *Id.* at 159-61. On the morning of the second day of trial, in a chambers conference, counsel for the Defendants described the circumstances and argued that the Plaintiff deserved to be treated as guilty of criminal witness tampering under 18 U.S.C.

[1] Although the occurrence was suspected based on the timing of the witness's revised testimony, it was also reportedly observed by individuals seated at the Defendants' table, including members of the Defendants' attorney's staff. The Plaintiff's attorney would later acknowledge to the Court at a conference of counsel that it did happen, after he had asked the Plaintiff, and the Plaintiff herself listened to proceedings in court pertaining to the occurrence without objection and ultimately apologized for it as well.

§ 1512, but he also offered that the Defendants would "forego any type of criminal sanctions for a dismissal." Aug. 19, 2026, Trial Tr. (hereafter "Day 2 Tr.") at 3. The attorney for the Plaintiff opposed the request, suggesting instead that prohibiting the Plaintiff from recalling the witness would be sufficient. *Id.* at 4; *see also* Day 1 Tr. at 150-52 (suggesting the witness might be recalled for rebuttal purposes). The Plaintiff's attorney also stated that he asked the Plaintiff about the matter and the Plaintiff "did indicate that it happened." Day 2 Tr. at 5.

I suggested that my inclination was to have the witness's testimony stricken in its entirety and to address the matter directly with the Plaintiff outside the presence of the jury, including by warning her that any further conduct of the kind would result in a dismissal with prejudice. *Id.* at 6. I expressed concern that the Plaintiff coached a witness directly in front of the jury and queried what, if anything, should be done to address the possibility that one or more jurors may have observed the Plaintiff. *Id.* at 7. The Defendant's attorney stated he was "still pushing" for a dismissal. *Id.* at 8. The Plaintiff's attorney stated he did not know what to do about it and said words suggesting, confusingly, that he labored under the apprehension that the Plaintiff might have jeopardized on appeal any verdict she might win. *Id.* at 10-11.

After the chambers conference, trial resumed and the Plaintiff called two more witnesses. Then, although the Plaintiff was done for the day, she did not formally rest her case because of ongoing witness availability issues. Before the Defendants called their first witness, I consulted once more with the attorneys and gave the jury a break. To enable the Defendants to make a motion for judgment as a matter of law, the Plaintiff's attorney

made a proffer concerning the anticipated testimony of the remaining witnesses, a therapist and one or two police officers.[2] *Id.* at 28-31. The parties then stipulated that two police reports would be accepted in evidence in lieu of live officer testimony. *Id.* at 31. The Plaintiff's proffer concerning her therapist described the substance of the symptoms that she related to her therapist over years of therapy sessions. *Id.* at 32.

The Defendants argued that taking into consideration all of the evidence introduced at trial and the proffer, there were "a number of fatal flaws to the Plaintiff's case." *Id.* The Plaintiff remained present in the courtroom and listened to the arguments, which focused on the lack of proper evidence of damages, the lack of any expert opinion testimony, difficulties of proving causation of any economic harm, and a lack of evidence on some elements of an invasion of privacy claim. *Id.* at 32-35. She then heard the Defendants' attorney address the matter of coaching the witness, his assertion that her behavior amounted to criminal witness tampering, and his request for an "involuntary dismissal" under Rule 41(b) of the Federal Rules of Civil Procedure. *Id.* at 35. She then listened as her own attorney responded, including to the effect that there could still be a measure of damages based on the Plaintiff's testimony. After addressing issues of proof, the Plaintiff's attorney turned to "the issue of what happened in the courtroom" and asked that the witness's testimony be stricken from the record as a more measured sanction. *Id.* at 45. The Plaintiff was present and voiced no objection regarding the attorneys' discussion of the matter.

[2] The Plaintiff's attorney expressed no intention of calling either Defendant Teske or Defendant Gunter in support of her case-in-chief.

I then explained that I would not rule on the Defendant's Rule 50 motion given that the Plaintiff had not yet rested. I further informed the Plaintiff that I was surprised and disappointed by the "way in which [she] behaved momentarily yesterday" and that it was contrary to all of the Court's efforts to ensure a fair trial. *Id.* at 48. I further stated that I was surprised that she had thought it "a good idea to coach a witness" during a sidebar, *id.*, and that I was sympathetic to the Defendants' argument but was still thinking the matter over. *Id.* at 49. I advised her that I was considering having her and her sister (the witness) return to the witness stand so that the Defendants' attorney could examine them on the episode. *Id.* at 50-53. The Plaintiff listened intently and never disagreed with the assertion that she had coached the witness. Indeed, the Plaintiff stated that she had listened and appreciated the feedback, and then she apologized to the Court. *Id.* at 53.

I recalled the jury and the Defendants presented their first witness, Amanda Gunter. Defendant Gunter's examination concluded at midday and the Court spoke briefly with counsel after the jury left the courtroom. Following a discussion of witness logistics, the Defendants' attorney indicated that he would like an award of attorney's fees to account for the delay associated with the Plaintiff's ongoing witness issues and the matter of witness coaching. *Id.* at 128-129. I did not indicate support for that supplemental request but advised that I was still inclined to allow the Defendants to call the Plaintiff back to the stand for cross-examination about coaching the witness. *Id.* at 130. In response, the Plaintiff's attorney commented that he might need to advise his client to "invoke" her right against self-incrimination rather than have the substance of the misconduct entered on the record. *Id.* at 130. The Defendants' attorney then offered that if the Plaintiff would

voluntarily dismiss her case, she would avoid any sanction or costs. *Id.* at 131. My final remarks on the matter were that I would wait to rule on the Defendant's Rule 50 motion until the Plaintiff's final witness was heard but intended to address the sanction issue sooner. *Id.* at 132-33. We recessed for the day and the attorneys went to confer with their clients and each other.

Shortly thereafter, the attorneys requested a conference in chambers. They indicated that the matter was resolved by agreement; that the Plaintiff would dismiss her claims with prejudice and the parties would make no mention in the future of what happened in the courtroom. It was agreed by the attorneys on the record that the dismissal would be filed within seven days. *Id.* at 133. The jury was recalled, advised, and discharged. The parties were not present in the courtroom when the jury was informed of their settlement. Day 2 Tr. at 134. Consequently, I did not announce the settlement in the Plaintiff's presence. The Plaintiff's motion to dismiss was not forthcoming. Instead, she now requests a new trial based on the alleged misdeeds of her trial attorney.

In her first filed motion (ECF No. 148), the Plaintiff notifies the Court that she has fired her attorney and that her attorney sexually assaulted her on August 3, 2026, roughly two weeks before the start of the trial. She also states that she denies "ever coaching any witness," Motion 1 at 1, ¶ 4, although she apologized for doing so, after having talked to her attorney about it and after being scolded about it in the courtroom. The Plaintiff also states that trial preparation by her attorney was lacking. I agree with this assessment based on the record, including a puzzling sidebar in which the Plaintiff's attorney stated that he had no idea what a witness would say since he tends not to talk to witnesses before trial,

for, in his words, "obvious reasons." Day 1 Tr. at 148-49. The Plaintiff also states that she was experiencing post-traumatic stress disorder during the trial and was likely mouthing words in a dissociative state to self-soothe and avoid an attack. She believes that this would explain what was perceived as coaching. She also asserts that she and the witness could not make eye contact due to the angle between their respective locations and the computer screen on the Plaintiff's table. Motion 1 at 2-4, ¶¶ 9-15. That contention, however, is contrary to reality. Next, after describing some of the circumstances of her attorney's alleged sexual abuse, the Plaintiff indicates that she told him that she did not agree to a settlement involving a dismissal. On the other hand, the Plaintiff also maintains that she was experiencing a panic attack and was coerced into expressing agreement. *Id.* at 4-5, ¶¶ 17-21; *see also* Mot. Ex. 1 (text messages). She concludes her first motion by asking the Court to disregard her allegedly coerced settlement and provide her with time to find new counsel.

In her second motion (ECF No. 151), the Plaintiff relates some additional allegations concerning her attorney's behavior, which evidently included comments that she could be thrown in jail for 20 years for witness tampering. Motion 2 at 2, ¶ 7. She states that she told him she would not dismiss her case regardless. *Id.* She also indicates that she later spoke with an intended witness who, contrary to her attorney's representations in court, stated that he was never contacted for purposes of testifying at the trial. *Id.* at 3, ¶ 12. The Plaintiff also characterizes the Defendants' conduct toward her in the past, suggesting that they need to be held accountable "for over a dozen felonies." *Id.* at 4, ¶ 17. She also relates that her attorney stated that there was not a sufficient prospect of a damages

recovery to make her case worthwhile and that he had better things to do on the remaining, scheduled trial dates. *Id.* ¶ 20. Citing Rule 60 of the Federal Rules of Civil Procedure, the Plaintiff requests relief from "the non-consented and coerced verbal agreement," time to secure new counsel, declaration of a mistrial, and an order directing her former attorney to return her files. *Id.* at 5. Citing Rule 59, the Plaintiff requests a new trial because the trial she received was not fair. *Id.* at 6. Citing Rule 54 and 28 U.S.C. § 1927, she asks for monetary relief against her former attorney. *Id.* at 7. In her third motion (ECF No. 153), the Plaintiff amends her second motion to correct certain typographical errors.

In their Response (ECF No. 154), the Defendants argue that the Plaintiffs' allegations concerning her attorney's misconduct are independent causes of action that have nothing to do with the trial or with them. Resp. at 1. They argue that neither Rule 59 nor Rule 60 is implicated by the Plaintiff's assertions and that, if the Court finds otherwise, the circumstances are not exceptional and the Plaintiff's claims have no merit. *Id.* at 2-3, 5. They then observe that their oral motion for judgment under Rule 50 was pending and exposed the flaws in the Plaintiff's case. *Id.* at 3. They quickly brief the arguments they made in court in support of dismissal. *Id.* at 3-5. They close with the argument that dismissal is independently appropriate as a sanction for witness tampering. *Id.* at 6.

## Discussion

In this discussion, I first consider whether it would be appropriate to grant the Plaintiff the relief she requests. Ultimately, my conclusion is that, although her allegations against her attorney are disturbing and could partially justify her motions for relief in the nature of a new trial, based on alleged coercion, the Plaintiff needs to better inform the

Court why a new trial would not be an empty exercise and an unfair imposition on the Defendants who are not responsible for either the Plaintiff's or her attorney's conduct, inside or outside of the courtroom. I then offer a separate concern over what I perceive as a likely Rule 11 violation; namely, the Plaintiff's recent disavowal in post-trial court filings of having coached a witness. Before I would proceed to make any ruling on that score, I would like to hear from the Plaintiff and the Defendants on the subject.

**A. Attorney Misconduct**

"In civil cases, inadequate representation is normally a matter to be resolved between the attorney and [the] client." *Capability Group, Inc. v. Am. Exp. Travel Related Services Co., Inc.*, 658 F.3d 75, 82 (1st Cir. 2011). In unusual circumstances, however, it can be a basis for post-judgment relief or the declaration of a mistrial. *Id.* (citing *Dávila-Álvarez v. Escuela de Medicina Universidad Central del Caribe,* 257 F.3d 58, 66 (1st Cir. 2001)); *Chang v. Smith,* 778 F.2d 83, 85 (1st Cir.1985) (reserving the question). "But at a minimum," such relief "would require both incompetent performance that the client could not have forestalled and a showing of likely prejudice." *Id. See also* Fed. R. Civ. P. 61 ("Unless justice requires otherwise, no . . . error by the court or a party . . . is ground for granting a new trial, . . . or for vacating, modifying, or otherwise disturbing a judgment or order. At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.").

Rule 59 authorizes the grant of a new jury trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). Rule 60 authorizes relief from a "judgment or order." Judgment has not

entered in this case. Conceivably, however, the Plaintiff might obtain relief from the docket order directing the parties to file a stipulation of dismissal based on their Notice of Settlement (ECF No. 142). If so, such relief would fall under the Rule's catchall for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6).

Under either Rule, the law requires a showing of both incompetent performance and likely prejudice. *Capability Group, Inc.*, 658 F.3d at 82; Fed. R. Civ. P. 61. I take it as established, for present purposes, that incompetent performance would be demonstrated if counsel settled a case through coercion or, alternatively, against the client's express objection.[3] I take it as established, for present purposes, because it would avoid an evidentiary hearing[4] into the truthfulness of the Plaintiff's assertions related to her lack of consent to settle, if, ultimately, prejudice did not actually arise from the ostensible

[3] The failure to designate or call an expert witness is the kind of failure by counsel that occurs with some regularity. I decline the Plaintiff's request for relief to the extent that she depends on that variety of alleged incompetent performance. If relief could be based on such failures, district courts would be unable to enforce the Rules of Civil Procedure because any exclusionary remedies called for under a rule, such as Rule 37(c), would become cause for a new trial.

[4] Although the apparent authority of trial counsel to settle a claim would seem to be paramount in the context of a mid-trial settlement; the injury to the opposing party, the court, and the jury is substantial in terms of lost time and/or resources; and it could be regarded as fair that the consequences of choosing a particular trial attorney should fall on his client, the Plaintiff's absence from both the chambers conference at which the settlement was announced and the in-court proceedings at which the settlement was announced to the jury and the jury was discharged, indicate the need for a hearing in order to determine the existence of actual authority. *See*, *e.g.*, *Malave*, 170 F.3d at 221 & n.6 (settlement during discovery phase); *Michaud v. Michaud*, 932 F.2d 77, 81 (1st Cir. 1991) (settlement reported after announcement of trial date). However, the issues before the Court arise in the context of the Plaintiff's Motions seeking a new trial. There is no motion to enforce a settlement currently before the Court. As for the Plaintiff's assertion that she was coerced into settlement against her will, the burden to negate the voluntariness of her action would fall on the Plaintiff rather than the Defendants, since the Defendants have no ability to prove otherwise. In any event, were the issue squarely before the Court in the context of a motion to enforce, it would be necessary for the Court to give the Plaintiff "a fair opportunity to have [her] say" before determining the issue. *Michaud*, 932 F.2d at 81.

agreement to settle or, stated otherwise, a new jury trial would only be an empty exercise. Hence, a hearing is suggested, but only in the event that attorney misbehavior and the lack of actual authority are essential to resolution of the current impasse. *See Malave v. Carney Hosp.*, 170 F.3d 217, 220 (1st Cir. 1999) ("As a general rule, a trial court may not summarily enforce a purported settlement agreement if there is a genuinely disputed question of material fact regarding the existence or terms of that agreement."); *Luis C. Forteza e Hijos, Inc. v. Mills*, 534 F.2d 415, 418 (1st Cir. 1976) ("The question [is] one of [the attorney's] actual authority, on which the client would be entitled to be heard, it being well-established that an attorney, merely by virtue of his employment, lacks authority to compromise." (observing, as well, that equivalent consequences might be imposed based on significant ancillary issues that implicate a court's inherent power to manage its affairs to achieve the orderly and expeditious disposition of cases)); *Barber-Coleman Co. v. Magnano Corp.*, 299 F. 401, 405 (1st Cir. 1924) ("[I]n this country, except in a few jurisdictions, it is held that an attorney has no power, by virtue of his retainer, and without express authority, to bind his client by compromise of a pending suit . . . ."); *McGee v. Cartoon Network, Inc.*, 383 Fed. App'x 12, 14 (1st Cir. 2010) (vacating dismissal where the evidence before the court did not compel the conclusion that an attorney's representation of authority to settle was accurate); and *Compare Muther v. Broad Cove Shore Ass'n*, 968 A.2d 539, 541 (Me. 2009) (upholding enforcement in absence of a hearing where "[e]ach party . . . affirmed on the record, in response to inquiries from the court, that the recital [of terms] was a fair and accurate representation of that agreement");

*Toffling v. Toffling*, 953 A.2d 375, 377 (Me. 2008) (affirming enforcement against party who orally agreed to it in open court and acknowledged that it was his voluntary act).

As for a showing of likely prejudice or harm to substantial rights, one issue is whether there was any force in the Defendants' Rule 50 motion, now reduced to writing.[5] Response at 3-5. I find that the Rule 50 motion was partially effective, specifically as to the claim for invasion of privacy. The Plaintiff's first privacy theory—appropriation of identity—consists of three elements: (1) that Defendant Teske intentionally used, or caused the use of, the Plaintiff's name or identity without authorization; (2) that the use presented the communication or statement as the Plaintiff's own or otherwise appropriated an identifiable aspect of her identity; and (3) that Mr. Teske used the name or identity for his own purpose or benefit.

This particular claim was developed entirely through the direct examination of the Plaintiff. Ultimately, the theory was not developed sufficiently in the Plaintiff's testimony to permit a finding in her favor. While the Plaintiff introduced evidence of Mr. Teske's efforts to persuade the Plaintiff to recant her allegations of domestic abuse, those efforts to persuade—or even coerce—did not demonstrate appropriation.

In the alternative, the Plaintiff proposes that she might prevail on an invasion of privacy involving intrusion on seclusion. The elements of this theory require proof of an

[5] Although the Plaintiff had not rested her case before the jury was discharged, she had informed the Court that she would call her therapist (as a fact witness) and the parties agreed that the Court could accept into evidence two police reports concerning the Mother's Day altercation. Rule 50 authorizes a court to impose judgment as a matter of law when a party has been "fully heard on an issue" and authorizes a motion for judgment "at any time before the case is submitted to the jury." Fed. R. Civ. P. 50(a)(1), (a)(2). It does not require that a party first rest its case.

(1) intentional, (2) intrusion, (3) upon premises occupied privately for purposes of seclusion, and (4) the intrusion must be highly offensive to a reasonable person. *Capital City Renewables, Inc. v. Piel*, 335 A.3d 588, 598 (Me. 2025). The nature of the intrusion was not developed sufficiently in the Plaintiff's testimony, or through any other witness, to permit a finding in her favor.

For these reasons, judgment as a matter of law on the Plaintiff's privacy count would have been (i.e., is) appropriate. As such, I fail to identify likely prejudice arising from the attorney's alleged abuse of power or authority. Conducting a second trial for purposes of this claim would be an empty exercise.

As for the remaining counts recited in the Plaintiff's Complaint—other than civil conspiracy, which is not a proper claim or count[6]—the Defendants' arguments over the scope of damages and causation are less than dispositive. These arguments would not have justified the entry of judgment as a matter of law. Still, they raise questions that warrant closer examination for purposes of the Plaintiff's request for a new trial.

The Defendants argue that the omission of an expert witness from the Plaintiff's witness lineup doomed her emotional distress claims. A plaintiff must satisfy four elements to recover on a claim of intentional infliction of emotional distress (IIED):

> (1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from [the defendant's] conduct;

[6] *See McNally v. Mokarzel*, 386 A.2d 744, 748 (Me. 1978) ("In Maine, conspiracy is not a separate tort but rather a rule of vicarious liability"). Assuming that an instruction on conspiracy was generated by the evidence, there would be no place for a civil conspiracy claim on the verdict form.

> (2) the conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, utterly intolerable in a civilized community;
>
> (3) the actions of the defendant caused the plaintiff's emotional distress; and
>
> (4) the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Lyman v. Huber*, 10 A.3d 707, 711 (Me. 2010).

The second element sets a very high bar. *See Curtis v. Porter*, 784 A.2d 18, 22 (D. Me. 2001). Moreover, the fourth element is not readily established by inference. Proof by inference is appropriate only if the nature of the extreme and outrageous conduct attributed to a defendant warrants such an inference. *Id.* at 713. "That possibility is . . . remote." *Id.* "In most instances, proof of objective symptoms will require expert testimony to establish that the plaintiff's emotional injury qualifies for a diagnosis such as shock, post-traumatic stress disorder, or some other recognized medical or psychological disease or disorder." *Id.* I welcome a more searching analysis from the parties on whether the Plaintiff's testimony concerning the Defendants' conduct is capable of meeting elements 2 and 4 of the IIED claim without the assistance of an expert's testimony.[7]

The remaining claim is captioned in the Complaint as a claim of negligent infliction of emotional distress (NIED). This claim runs only against Defendant Teske. In the standard formulation of a negligence claim, "[t]he duty of reasonable care . . . is a duty to

---

[7] The Defendants did raise such an argument on behalf of Defendant Gunter in their Motion for Summary Judgment (ECF No. 43). However, I summarily denied that motion (ECF No. 52) because it was based on a subset of the relevant circumstances of the claim against Gunter and said nothing at all about the claim as it pertained to Defendant Teske.

act reasonably to avoid causing physical harm to others." *Boivin v. Somatex, Inc.*, 279 A.3d 393, 396–97 (Me. 2022) (internal quotation marks omitted). "[T]here is no analogous general duty to avoid negligently causing emotional harm to others." *Curtis*, 784 A.2d at 25. Moreover, the "determination of duty for claims of emotional harm 'is not generated by traditional concepts of foreseeability.'" *Boivin*, 279 A.3d at 398 (quoting *Curtis*, 784 A.2d at 25). At the pretrial conference, the Plaintiff's NIED claim was amended to assert a negligence claim against Mr. Teske. Given that the claim runs exclusively against Mr. Teske and arises out of the Mother's Day altercation between the Plaintiff and Ms. Gunter, it is appropriate to explore what Maine law has to say about when it is appropriate to impose a duty on a defendant to prevent physical violence carried out against the plaintiff by a third person and whether the Plaintiff's testimony was sufficient to demonstrate that the duty arose and was breached by Mr. Teske. I welcome comment from the parties before drawing any definitive conclusion.

Like the issues I have flagged in regard to the IIED claim, the existence of a duty for purposes of negligence law presents a question of law for the Court to decide. *Argereow v. Weisberg*, 195 A.3d 1210, 1219 (2018); *Cameron v. Pepin*, 610 A.2d 279, 282 (Me. 1992).

As to all of the questions I have posed, the Plaintiff relied on her own testimony and her testimony was developed by her attorney. Before I issue an order on the extraordinary relief now sought by the Plaintiff, I would like to hear from the parties on these issues, to ensure that empaneling a new jury to hear these claims again would not be an empty

exercise. If these claims are ill conceived, there is no justification for a new trial and dismissal with prejudice would be the appropriate resolution.

**B. Rule 11**

Rule 11 provides in relevant part:

> By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it—an . . . unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> . . .
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b). "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any . . . party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). Even aside from these rule-based requirements, the Court has inherent authority to sanction false contentions. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991) ("A primary aspect of [a federal court's discretion to exercise its inherent powers] is the ability to fashion an appropriate sanction for conduct which abuses the judicial process."); *Balerna v. Gilberti*, 708 F.3d 319, 323 (1st Cir. 2013).

Based on what transpired in the courtroom on the second day of trial, in particular the Plaintiff's acknowledgement that she had coached the witness and her apology to the Court for doing so, it is concerning that she now maintains in her motion papers that she did not coach the witness and that her mental health symptoms have been misconstrued to her unfair disadvantage. The Plaintiff is ORDERED TO SHOW CAUSE why her case is not subject to the sanction of dismissal for the combined misconduct of coaching a witness during trial and then lying about it in subsequent motion papers. The Defendants may be heard in opposition.

CONCLUSION

For the reasons set out above, the Plaintiff's Motions are RESERVED and the parties are directed to address the issues raised in the preceding discussion. Those issues are: (1) whether the Plaintiff's testimony established a basis for liability for either Defendant on the IIED count; (2) whether the Plaintiff's testimony established a basis for recognition of a legal duty owed to her by Defendant Teske to prevent an assault by Defendant Gunter; and (3) whether the Plaintiff's case should be dismissed for the combined sanctionable conduct of coaching a witness and then falsely disclaiming that she did any such thing after having acknowledged and apologized for the conduct in open court.

The parties will file their initial briefs of no more than 21 pages on or before December 4, 2026, and will file responses of no more than 10 pages on or before December 18, 2026. When drafting, the parties may assume that the Court is familiar with the trial transcripts and procedural history and they do not need to recite the same by way of background and may simply discuss the relevant evidence in support of their arguments.

SO ORDERED.

Dated this 19th day of November, 2026.

/s/ Lance E. Walker
Chief U.S. District Judge